# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN P. KAROLY, JR.,** : | |
| : | |
| **Appellant** : | **CIVIL ACTION NO. 3:13-0138** |
| : | |
| v. : | **(MANNION, D.J.)** |
| : | |
| **WILLIAM SCHWAB,** *Chapter 7* : | |
| *Trustee for the Estate of Cleaview* | |
| *Builders, Inc.,* : | |
| **Appellee** : | |

## MEMORANDUM

John P. Karoly, Jr., a former Pennsylvania attorney, represented Dennis Slayton in a series of criminal and civil actions between 2005 and 2007. Mr. Karoly claims that Mr. Slayton agreed to sell him approximately 24 acres of property in Milford Township, Pike County, Pennsylvania, as a way to pay for his legal services. This property was held by Phoenix Soils, LLC, ("Phoenix") a company owned and operated by Mr. Slayton. Between March 2005 and September 2005, Mr. Karoly claims he made a series of payments to Mr. Slayton to complete the land sale. However, no sale agreement or deed was signed until after January 2007.

Around this same time, Mr. Slayton's various companies, including Phoenix, were involved in involuntary Chapter 7 bankruptcy proceedings. On September 28, 2006, the bankruptcy court entered default judgment against

Mr. Slayton and these entities. That order incorporated the Milford property into the Chapter 7 bankruptcy and gave the Chapter 7 Trustee the authority to administer the properties. When the bankruptcy trustee tried to sell the Milford property in January 2007, Mr. Karoly and Mr. Slayton both objected claiming Mr. Karoly owned the property. Those objections were later withdrawn. The property was then sold and the funds placed in escrow. Mr. Karoly filed a motion claiming he held equitable title to the property and was entitled to the funds. After a two-day trial, the bankruptcy court denied his motion, finding that there was insufficient evidence to show that Mr. Karoly had an equitable interest in the property. This appeal followed.

The court finds there is sufficient evidence to support the bankruptcy judge's factual findings and legal conclusions. Mr. Slayton's earlier judicial admissions were withdrawn and his testimony established that there was never any sales agreement prior to the land being incorporated into the Chapter 7 bankruptcy. The evidence supports the bankruptcy judge's findings that there was no agreement to sell the property in light of the parties intent in May 2005 and that payments to Mr. Slayton essentially constituted a personal loan. As such, the appeal is **DENIED** and the findings of the bankruptcy court are **AFFIRMED**.

I.   **FACTUAL BACKGROUND**

Although the relationship between Mr. Karoly and Mr. Slayton is long and complex, the court will only recite the facts necessary to this appeal. In February 2005, an involuntary Chapter 7 bankruptcy petition was filed against Clearview Builders, Inc. ("Clearview") in the bankruptcy court for this district. (App. 7). Mr. Slayton was the owner of Clearview and used another company, Phoenix, to hold all of his property. (App. 226).

Mr. Karoly began representing Mr. Slayton in a series of criminal and civil matters in Pennsylvania state court starting in April 2005. (App. 361). During this representation, Mr. Slayton's personal assets were frozen, so he could only pay an initial retainer of $50,000. (App. 446). As he was unable to pay for the ongoing litigation, Mr. Karoly loaned Mr. Slayton the cost of the litigation. He also bought several pieces of property from Mr. Slayton that are not at issue in this appeal.[1] (App. 361-364). In total, Mr. Karoly paid $350,191.48 to Mr. Slayton either for litigation expenses or land. Specifically between May 2005 and March 2007, Mr. Karoly wrote $107,000 in checks to Mr. Slayton with the notation "loan" in the memorandum. An additional

---

[1]It appears that Mr. Karoly purchased four pieces of land in Wayne county and also an option to purchase property from Mr. Slayton during this period.

$79,000 in checks had some notation that indicated they were for real estate, but did not indicate what property was at issue. (App. 361-64). Four other checks issued on October 8, 2005, totaling $40,000, noted they were in exchange for specific pieces of property in Wayne County. (App. 405-7). No other check references any specific property or property transaction.

Sometime in May 2005, Mr. Karoly claims that he and Mr. Slayton came to an oral agreement to transfer a 24-acre piece of property owned by Phoenix located in Milford Township in exchange for $160,000. (App. 517-18). According to him, the first $160,000 in checks issued to Mr. Slayton constitute the purchase price for that property. (Id.). Based on Mr. Slayton's records, his expenses for the litigation amounted to more than $202,000 by the end of September 2005, well over the alleged purchase price. (App. 361-62).

After the bankruptcy case was converted to a Chapter 11 case in March 2005, it was converted back to a Chapter 7 proceeding in January 2006 and the U.S. Trustee's Office appointed a Chapter 7 Trustee. (App. 14). In June 2006, the Chapter 7 Trustee filed adversary proceedings in the bankruptcy court and filed a complaint against Clearview, Mr. Slayton, and his other companies, including Phoenix. (App. 15-31). The complaint avers that Mr. Slayton and his various companies, including Phoenix, were alter egos of

4

each other. Further, the complaint claims that Mr. Slayton deposited seven checks from Mr. Karoly totaling $115,000 into Phoenix's accounts. (App. 23-24).

On September 27, 2006, Mr. Karoly paid $4,733.10 to Pike County for taxes due on the Milford property. Although he claims that he was the equitable owner at this point and had fully paid the purchase price, this charge was still listed as part of his costs billed toward Mr. Slayton. (App. 364, 397). The next day, after Mr. Slayton and his companies failed to respond to the Chapter 7 Trustee's complaint, default judgment was entered and the Milford property was incorporated into the bankruptcy. (App. 33-34). In January 2007, the Chapter 7 Trustee filed a motion to sell the Milford property for $300,000. (App. 81). Mr. Slayton and Mr. Karoly both filed objections to this sale, claiming the property was not part of the bankruptcy because Mr. Karoly became the equitable owner prior to the default judgment. (App. 85, 89). These objections were ultimately withdrawn, the property was sold, and the funds were placed in escrow so the court could determine whether either party had an equitable claim. (App. 93).

Just after the Chapter 7 Trustee filed his motion, Mr. Karoly and Mr. Slayton signed a deed and sales agreement that were backdated to May 25,

2005. (App. 589-93). Mr. Karoly and Mr. Slayton both agree that these documents were both signed *after* the property was incorporated into the bankruptcy and after the Chapter 7 Trustee filed his motion to sell the Milford property. (App. 225; 534). Prior to the Chapter 7 Trustee's motion, there was nothing in writing that directly indicated that any part of the over $350,000 loaned to Mr. Slayton was specifically connected to the purported sale of the Milford property. Mr. Slayton stated that he never agreed to sell the property to Mr. Karoly in May 2005 and the transaction wasn't contemplated until the property was incorporated into the bankruptcy. According to him, Mr. Karoly insisted he sign the sales agreement and deed so they would have something to show to the bankruptcy court. (App. 224). Mr. Slayton stated that he agreed to put the property in Mr. Karoly's name only so it could be protected from the ongoing bankruptcy proceedings. (Id.).

After the sale, a trial was held before the bankruptcy court to determine the ownership of the Milford Property. (App. 135).[2] The bankruptcy judge heard testimony from Mr. Slayton, reviewed the deposition testimony of Mr. Karoly, and admitted into evidence the checks from Mr. Karoly to Mr. Slayton,

---

[2]The trial involved two issues: (1) ownership of the Milford property; and (2) the Chapter 7 Trustee's objection to Mr. Karoly's Proof of Claim, which is not presently at issue.

the objections to the sale, the sales agreement, and the deed.

After the trial, Mr. Karoly filed a motion to determine ownership of the Milford property. The issue was briefed and the judge heard oral arguments. On December 6, 2012, the bankruptcy judge ruled from the bench, finding that:

> Where we are, I gather, is that there was property owned by Phoenix Soils that was administered by the trustee in bankruptcy, liquidated. Then Mr. Karoly came in and objected to the sale saying, "I'm the owner." In an attempt to . . . I guess . . . in an attempt to do something, created this backdated deed and agreement. It's got to disturb his credibility. I think we've talked about this and we agree it was a meaningless gesture.

(App. 740). The judge further determined that:

> Trying to be consistent [with the finding that Mr. Slayton was never in bankruptcy], I'm looking at the same thing. I'm hearing argument that Mr. Karoly, who was a lawyer, paid Mr. Slayton for property owned by another entity. That makes no sense. Now he's a lawyer. He knows what he's doing. In fact – if, in fact, a legal equitable transfer took place, he should have been a little more careful about it. It didn't take place. That's the way I look at it. And at the time the sale occurred, the property was owned by Phoenix. That I have every reason to believe Mr. Karoly is a creditor, probably a creditor of Mr. Slayton who may or – and I – from what I understand, Mr. Slayton has no liquid assets.
> What's before me is the motion to distribute the proceeds. I just don't – after looking at Mr. Karoly's deposition, after listening to the record again, after looking at the exhibits, reading the briefs, and after appreciating that we have kind of an unusual situation where the assets of these other entities are thrown into the estate for distribution, I have to deny your motion. And I think I've articulated the reasons why.

7

(App. 744-45). In sum, the judge found Mr. Karoly's testimony not to be credible and he ruled that Mr. Slayton's version of events to be more accurate. He further determined that there was never a sales agreement prior to the property being incorporated into the bankruptcy and that any later documentation was a "meaningless" fabrication to protect the property. Further, he found that the agreement between Mr. Slayton and Mr. Karoly did not amount to a real estate transaction. The bankruptcy judge essentially concluded the funds were a personal loan from Mr. Karoly to Mr. Slayton to fund ongoing and costly state-court litigation. As such, Mr. Karoly is a creditor to Mr. Slayton individually and has no claim against the Milford property.

## II.   PROCEDURAL BACKGROUND

This appeal was commenced on January 22, 2013. (Doc. 1). The appellant filed his brief on May 2, 2013. (Doc. 10). The appellee filed a motion to dismiss the appeal, (Doc. 12), and his brief in support, (Doc. 13), in May 2013. The appellant filed his brief in opposition to the appellee's motion to dismiss on June 21, 2013, (Doc. 16), and the court denied the appellee's motion on December 31, 2013, (Doc. 18). The appellee filed his brief in opposition to the appeal on January 21, 2014. (Doc. 20). The appellant filed

his reply brief on February 11, 2014. (Doc. 23). With the issues fully briefed and presented before the court, the case is now ripe for a decision.

### III. STANDARD OF REVIEW

In reviewing issues on appeal, the court accepts the factual findings of the bankruptcy court unless they are clearly erroneous and exercises a plenary review of any legal determinations or conclusions. See *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir.1999). "[A Bankruptcy Judge's] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 92 (3d Cir. 1992). The "clearly erroneous" standard is highly deferential. The issue is not whether another judge or court may have decided the case differently, rather the standard is essentially plausibility. See *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (noting that if there sufficient evidence that makes the presiding judge's ruling plausible, it should not be disturbed even if the court would have decided the issue differently). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and

due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness." Fed. R. Bankr. P. 8013.

With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercises 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir.1991) (*citing Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. *In re Hechinger*, 298 F.3d 219, 224 (3d Cir.2002); *In re Telegroup*, 281 F.3d 133, 136 (3d Cir.2002).

## IV. DISCUSSION

This bankruptcy appeal comes before the court for review as to whether the bankruptcy court erred when it denied John P. Karoly's motion for an Order Determining Proceeds Escrowed by the Trustee following the sale of property located in Milford Township, Pennsylvania. Mr. Karoly advances four

central contentions. First, he contends that Mr. Slayton's initial objection to the Chapter 7 trustee's attempt to sell the Milford Township property contained a binding judicial admission that he sold that land to Mr. Karoly prior to it being incorporated into the bankruptcy. Second, Mr. Karoly argues that the default judgment conclusively established that Mr. Slayton and Phoenix were alter-egos. As such, any payment to Mr. Slayton must be viewed as a payment to Phoenix, thereby evidencing the agreement to transfer the property between Mr. Slayton and Mr. Karoly. Third, he clams that the Chapter 7 Trustee is judicially estopped from arguing the funds transferred from Mr. Karoly to Mr. Slayton did not constitute consideration for the alleged land sale agreement. Lastly, he contends that the judge's determination that there was no sales agreement prior to the property being incorporated into the bankruptcy goes against the weight of the evidence. The court will address each contention in turn.

    A.    <u>The Judicial Admission is not Binding because it was Effectively Withdrawn by Mr. Slayton Prior to Trial</u>

Mr. Karoly first argues that Mr. Slayton made a binding judicial admission that he agreed to sell the Milford Property in May 2005. Specifically, Mr. Slayton's objection to the trustee's motion to sell the Milford property contains the following statement: "Prior to the date that Phoenix Soils

LLC became a debtor in this bankruptcy case . . ., the property sought to be sold by the Trustee was sold by Phoenix Soils LLC for fair market value under abundant documentation to John P. Karoly who is the legal and equitable owner of the property." (App. 85). This objection was later withdrawn and the property was sold. (App. 93).

In order to be binding, judicial admissions must be unequivocal and must also be statements of fact that would normally require evidentiary proof, not statements that espouse legal theories or conclusions. *In re Teleglobe Communications Corp.*, 493 F.3d 345, 377 (*citing Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir.1972)). Further, judicial admission may be withdrawn by amendment, *West Run Student Housing Associates, LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013), but can still be used as substantive evidence of the factual allegations contained therein, *Giannone v. U.S. Steel Corp.*, 238 F.2d 544, 547 (3d Cir. 1956). Judicial admissions may further be disregarded by the court "in the interest of justice." *The Doyle*, 105 F.2d 113, 117 (3d Cir. 1939).

The question here is somewhat novel: is a former party's admission still binding on that party even though the objection was withdrawn and never amended or reasserted? Although this question has not been squarely

addressed by the Third Circuit, *West Run* provides guidance. In that case, the court cited a series of cases from within this circuit and from outside that held withdrawn pleadings do not constitute binding judicial admissions. For example, the court noted that *Giannone* recognized that "withdrawn or superseded pleadings" do not constitute judicial admissions. *West Run*, 712 F.3d at 171 (citing *Giannone*, 238 F.2d at 547). Further, *West Run* cited *Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996), where the Ninth Circuit determined that withdrawn answers and pleadings by an opposing party were admissible as statements by a party-opponent, but were not conclusive on the factual issues alleged therein.

Here, the objection was ultimately withdrawn and no superceding or amended objection was filed. Had Mr. Slayton filed an amended objection, the new factual assertions would be binding, while the original withdrawn admissions could be offered as evidence "rebutting a subsequent contrary assertion" during summary judgment or trial. *West Run*, 712 F.3d at 173-74. Although the cases cited above all involved a party that filed subsequent amended pleadings, the reasoning still holds. When a pleading is fully withdrawn, the party asserting that pleading is no longer bound by the factual assertions contained therein. Therefore, the entire objection is only admissible

as evidence that Mr. Slayton sold the property to Mr. Karoly. It does not constitute a binding judicial admission.

For those reasons, the bankruptcy judge was not required to reject Mr. Slayton's testimony insofar as it conflicted with his withdrawn objection. As was established at trial, Mr. Slayton claimed he did not know about the substance of the objection and further refuted that there was any agreement for sale prior to the property being incorporated into the bankruptcy in September 2006. (App. 224). The judge properly credited this testimony and rejected the withdrawn judicial admission, so no error occurred.

>   B.   The Default Judgment did not Establish that the Payments from Mr. Karoly to Mr. Slayton were in Exchange for the Milford Property and the Chapter 7 Trustree is not Judicially Estopped from Arguing the funds were not part of a sale of the Milford Property

Mr. Karoly next asserts that the judge's determination that the payments from Mr. Karoly to Mr. Slayton were not payments for the Milford Township property constitutes error. He notes that when the bankruptcy court entered default judgment, it found that Mr. Slayton and his various companies, including Phoenix, were alter egos. Therefore, he claims any payment to Mr. Slayton must also be construed as a payment to Phoenix. Further, he argues that the Chapter 7 Trustee is judicially estopped from arguing that the checks

from Mr. Karoly did not go to Phoenix's account because of allegations contained in the complaint.

After default judgment is entered, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true" and are deemed admitted by the defaulting party. *J & J Sports Prods. Inc. v. Jamie A. Craley*, 2014 WL 1203314 (M.D. Pa. Mar. 24, 2014)(*quoting DirectTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005)). Mr. Karoly now argues that because of the default judgement, the bankruptcy court was bound to find that every transaction between Mr. Slayton could be imputed on all of his companies, including Phoenix. However, the bankruptcy judge determined that Mr. Karoly's payments were made directly to Mr. Slayton individually. The judge was not bound to find that every transaction implicated every company or that every payment to Mr. Slayton must necessarily constitute a payment to Phoenix. Such a broad reading of the default judgment and factual admissions is illogical and unsupported by the record.

When a bankruptcy action is commenced, "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the bankruptcy estate. 11 U.S.C. §541(a)(1). The bankruptcy estate, therefore, holds the same property rights as the debtor had

at the time of incorporation. *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994). The bankruptcy judge found that there was never a transfer of equitable interest in the Milford Township property in May 2005 and did not find Mr. Karoly's deposition testimony or the evidence of the backdated sales agreement and deed to be credible. (App. 740). He accepted Mr. Slayton's testimony that there was never a sales agreement formulated prior to the real estate being incorporated into the bankruptcy proceedings and there was no agreement to convey the property prior to that time. (App. 224-26; 744). Further, Mr. Slayton and Mr. Karoly both agreed that the sales agreement and deed were signed after the property was incorporated into the bankruptcy. (App. 226, 533-34). The judge property framed the transaction based on the credible testimony and evidence presented. As such, at the time of incorporation, Mr. Slayton held full equitable and legal title to the Milford property and the bankruptcy estate assumed his interest. The bankruptcy judge was not bound to find that every transaction with Mr. Slayton necessarily implicated his alter-ego companies as well. There was no error.

The court must next determine whether the Chapter 7 trustee was barred from arguing that Mr. Karoly's checks were transferred to Phoenix's account based on the doctrine of judicial estoppel. "Judicial estoppel is a

judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that [it] has previously asserted in the same or in a previous proceeding." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 272 (3d Cir. 2012) (internal quotation marks omitted). The purpose of the doctrine is to ensure the integrity of the judicial process and to prevent parties from altering their positions based on the changing landscape of a case. *Id.* Judicial estoppel is an extreme remedy and should only be used in order to prevent a miscarriage of justice. *MD Mall Associates, LLC v. CSX Transp., Inc.*, 715 F.3d 479, 486 (3d Cir. 2013)(citing *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir.2003)). In order to show whether judicial estoppel is an appropriate remedy, the court must determine whether: (1) the party's position is "irreconcilably inconsistent"; (2) the position was adopted in bad faith; and (3) estoppel redresses the potential harm and no lesser sanctions would be sufficient. *MD Mall*, 715 F.3d at 486 (*citing G–I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir.2009)).

Mr. Karoly argues that the complaint alleges that "the checks made payable to Mr. Slayton were deposited by Mr. Slayton in a Phoenix Soils bank account. Thus, the ultimate beneficiary of the checks was Phoenix Soils."

(Doc. 10, p. 17). The complaint lists a series of checks totaling $115,000 that were issued by Mr. Karoly to Mr. Slayton and were then deposited in Phoenix's bank account. (App. 23-24). Although the complaint alleges that the checks were deposited with Phoenix, it does not follow that they must be viewed as consideration for the purported land sale transaction between Mr. Karoly and Phoenix. The Trustee's only assertion was that those checks were deposited by Mr. Slayton in Phoenix's account.

Further, Mr. Slayton wrote over 28 checks that contained notes that indicated they were either loans or for real estate/property, yet the complaint only details that seven of these checks were ever deposited in Phoenix's account. Of the seven checks listed in the complaint, only four checks, totaling $55,000, have a notation dealing with a land transfer. The remaining $60,000 contained language that indicated they were part of a loan. (App. 23-24; 361-64). The Chapter 7 Trustee's position that those checks were given to Mr. Slayton individually and did not constitute part of the alleged Milford Township land transaction is not "irreconcilably inconsistent" with the allegations contained in the complaint. Why Mr. Slayton deposited loan checks and checks purportedly for real estate with Phoenix was not discussed in the complaint. The Chapter 7 Trustee is justified in arguing that these funds

were not connected to the Milford property. For those reasons, judicial estoppel is not appropriate.

C.   <u>The Bankruptcy Judge's Findings are Supported by the Record</u>

Lastly, the court finds there is abundant evidence to support the bankruptcy judge's findings. Although Mr. Karoly argues that the bankruptcy judge's determinations were not based on his weighing of witness credibility, this does not accurately reflect the record before the court. Specifically, the bankruptcy judge noted that Mr. Karoly's credibility was disturbed by the backdated sales agreement and deed that both Mr. Karoly and Mr. Slayton admit was only signed after the property was incorporated into bankruptcy. (App. 226, 533-34, 740). He also credited Mr. Slayton's verison of events when he determined that there was never a valid sales agreement in May 2005 or at any other time to transfer the Milford property to Mr. Karoly. (App. 224-25, 744).

Further, $107,000 of the checks from Mr. Karoly to Mr. Slayton had "loan" written in the memorandum, while $79,000 had some notation having to deal with land purchases.(App. 361-64). Although four other checks, totaling $40,000, note specific pieces of property in Wayne County, the rest

of the checks are silent as to which property they relate. (App. 405-7). Even when he claims he was the full equitable owner of the property, Mr. Karoly continued to charge the real estate tax payments against Mr. Slayton. (App. 364). There is sufficient evidence to support the bankruptcy judge's determination that no equitable transfer of land occurred because these payments were personal loans made by Mr. Karoly to Mr. Slayton.

These payments, therefore, bear no relation to any alleged land transfer. The bankruptcy judge's determination that Mr. Karoly was not credible is sufficiently and abundantly supported by the record. Thus, Mr. Karoly is an individual creditor of Mr. Slayton and has no equitable interest in the Milford Township property.

## V. CONCLUSION

For the reasons discussed above, the appeal is **DENIED**. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: August 22, 2014**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-138-02.wpd